﻿Citation Nr: AXXXXXXXX
Decision Date: 01/18/19 Archive Date: 01/18/19

DOCKET NO. 181026-715
DATE: January 18, 2019

ORDER

Entitlement to service connection for posttraumatic stress disorder (PTSD) is granted.

Entitlement to service connection for schizoaffective disorder is granted.

A total disability rating for compensation purposes based on individual unemployability due to service-connected disabilities (TDIU) is granted.

FINDINGS OF FACT

1. The Veteran’s currently diagnosed PTSD and schizoaffective disorder are related to in service military sexual trauma (MST).

2. For the entire period on appeal, the Veteran was unable to maintain substantially gainful employment as a result of service connected disabilities.

CONCLUSIONS OF LAW

1. Resolving reasonable doubt in the Veteran’s favor, the criteria for service connection for PTSD have been met. 38 U.S.C. §§ 1131, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.326, 4.125 (2017).

2. Resolving reasonable doubt in the Veteran’s favor, the criteria for service connection for schizoaffective disorder have been met. 38 U.S.C. §§ 1131, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.326, 4.125 (2017).

3. Resolving reasonable doubt in the Veteran’s favor, for the entire rating period on appeal, the criteria for a TDIU have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.340, 3.341, 4.3, 4.15, 4.16, 4.18, 4.19, 4.25 (2017).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework of review for Veterans dissatisfied with VA’s decision on their claim. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.

The Veteran, who is the appellant, had active service from August 1986 to December 1989. The Veteran selected the Higher-Level Review lane when the RAMP election form was submitted. Accordingly, the August 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

In the August 2018 RAMP decision, the AOJ found that the Veteran was diagnosed with both PTSD and schizoaffective disorder. The Board is bound by this favorable finding. AMA, Pub. L. No. 115-55, § 5104A, 131 Stat. 1105, 1106 07.

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C. §§ 5102, 5103, 5103A, 5107, 5126 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.326(a) (2017). As the instant decision grants all of the issues on appeal, no further discussion of VA’s duties to notify and assist is necessary.

1. Service Connection for PTSD and Schizoaffective Disorder

Service connection may be granted for disability arising from disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1131; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. 

PTSD is not a chronic disease under 38 C.F.R. § 3.309(a); however, schizoaffective disorder is a presumptive disease of psychosis. As such, the presumptive service connection provisions under 

38 C.F.R. § 3.303(b) for service connection based on “chronic” symptoms in service and “continuous” symptoms since service are not applicable to the PTSD issue on appeal, but are applicable to the schizoaffective disorder. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. With chronic disease as such in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. If a condition noted during service is not shown to be chronic, then generally, a showing of continuity of symptoms after service is required for service connection. 38 C.F.R. 

 § 3.303(b). 

Where a veteran served ninety days or more of active service, and a psychosis become manifest to a degree of 10 percent or more within one year after the date of separation from such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309(a). While the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time.

Lay assertions may serve to support a claim for service connection by establishing the occurrence of observable events or the presence of disability or symptoms of disability subject to lay observation. 38 U.S.C. § 1154(a) (2012); 38 C.F.R. 

§ 3.303(a); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F. 3d 1331, 1336 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). The United States Court of Appeals for the Federal Circuit (Federal Circuit) has clarified that lay evidence can be competent and sufficient to establish a diagnosis or etiology when (1) a lay person is competent to identify a medical condition; (2) the lay person is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

The Board has thoroughly reviewed all the evidence in the Veteran’s claims file and adequately addresses the relevant evidence in the instant decision. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, every piece of evidence of record. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence).

Service connection for PTSD requires medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125(a); a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred.

For PTSD claims based on in-service personal assault, evidence from sources other than the veteran’s service records may corroborate the veteran’s account of the stressor incident. Examples of such evidence include, but are not limited to: records from law enforcement authorities, rape crisis centers, mental health counseling centers, hospitals, or physicians; pregnancy tests or tests for sexually transmitted diseases; and statements from family members, roommates, fellow service members, or clergy. Evidence of behavior changes following the claimed assault is one type of relevant evidence that may be found in these sources. Examples of behavior changes that may constitute credible evidence of the stressor include, but are not limited to: a request for a transfer to another military duty assignment; deterioration in work performance; substance abuse; episodes of depression, panic attacks, or anxiety without an identifiable cause; or explained economic or social behavior changes. VA may submit any evidence it receives to an appropriate medical or mental health professional for an opinion as to whether it indicates that a personal assault occurred. 38 C.F.R. § 3.304(f)(5) (2017).

Preliminarily, the Board finds that in this case a psychiatric disability did not exist prior to service. Because a psychiatric disability was not noted at service entrance, the presumption of sound condition as it relates to a psychiatric diagnosis is applicable. The Board notes that there is some evidence that the Veteran suffered childhood sexual assault; however, per a May 2018 private mental health examination, after reviewing the relevant evidence, a private psychologist assessed that the childhood sexual trauma “did not impact [the Veteran’s] mental health or in any way cause his current PTSD.” 

As discussed above, the AOJ found that the Veteran has current diagnoses of PTSD and schizoaffective disorder. As such, the question before the Board is whether the mental health disorders are related to the reported in-service MST.

Throughout the course of this appeal, and as reiterated in the May 2018 private mental health examination, the Veteran has reported being the subject of MST during service. Specifically, per the Veteran, the assault occurred on or about July 1988. Having reviewed the evidence of record, the Board finds the evidence of record sufficient to support a finding of MST during service.

Per the private examination report, the private psychologist was asked to review the evidence of record for “markers” of MST, and the psychologist identified a number of markers sufficient to corroborate the MST under 38 C.F.R. 

§ 3.304(f)(5). First, the private psychologist noted that the Veteran voluntarily discharged from the Air Force within one year of the MST despite having positive performance evaluations. The Veteran has advanced on multiple occasions that he would have continued to serve in the Air Force if not for the MST.

Second, in September 2017, the Veteran’s mother submitted a lay statement concerning the Veteran’s mental health prior to, during, and after service. Per the statement, prior to service the Veteran was optimistic and had a great personality. During service the Veteran would write and call his mother on a weekly basis. Then, in the autumn of 1988, the Veteran ceased such contact. When the mother finally reached the Veteran, he was agitated, angry, sullen, and did not want to talk. Upon separating from service, the Veteran continued to display a negative personality shift and emotional problems. The private psychologist found this to be a MST marker.

Third, the Veteran’s mother also noted that during service the Veteran lost 30 pounds. In September 2017, VA received a pre service photograph from the Veteran and a post service photograph. The Veteran’s significant weight loss can be seen between the two photographs. The private psychologist found this drastic weight loss to be a MST marker. In addition to the weight loss, the private psychologist also found the Veteran’s post service alcohol abuse to be an additional marker of MST.

Considering the above, the Board finds the Veteran’s asserted MST to be corroborated under the requirements of 38 C.F.R. § 3.304(f)(5). Finally, the Board finds the evidence is at least in relative equipoise on the question of whether the currently diagnosed PTSD and schizoaffective disorder are related to the recognized MST stressor.

The Veteran received a VA mental health examination in June 2016. At the conclusion of the examination, the VA examiner opined that it was at least as likely as not that the Veteran’s PTSD and schizoaffective disorder were due to MST. Specifically, the VA examiner noted that service personnel records showed the Veteran was performing his duties well, with a chance of promotion, until the MST that led the Veteran to seek service separation. Further, the evidence showed that the Veteran’s functional ability had deteriorated since leaving service.

A private mental health examination report was submitted to VA in May 2018. Like the VA examiner, the private psychologist also found it at least as likely as not that the PTSD was due to in service MST. In rendering this opinion, the private psychologist cited to the evidence used to support the June 2016 VA opinion and specifically noted agreeing with the VA examiner’s findings. The report also indicated that the schizoaffective disorder was related to service, but the psychologist did not provide an outright opinion on that question. 

The evidence shows that the Veteran has current diagnoses of PTSD and schizoaffective disorder, an in service stressor (here MST) sufficient to support a diagnosis of PTSD, and the evidence of record is at least in equipoise on the question of whether the Veteran’s PTSD and schizoaffective disorder symptoms are related to the in service MST. Two examiners, one VA and one private, have attributed the mental health disorders to the in service MST. Resolving reasonable doubt in the Veteran’s favor, the Board finds that the criteria for service connection for both PTSD and schizoaffective disorder have been met. 38 U.S.C. § 5107; 

38 C.F.R. § 3.102.

Finally, the Board notes that the evidence of record indicates that the Veteran may be diagnosed with other mental health disorders. Where a veteran is diagnosed with multiple mental health disorders, and it is unclear from the record which symptoms are attributable to each distinct disability, the Board is precluded from differentiating between the symptomatology and the disabilities. See Mittleider v. West, 11 Vet. App.181, 182 (1998) (per curiam). In this case, the Board is unable to differentiate the symptomatology of the now service connected PTSD and schizoaffective disorder from any other potential mental health disorders. As such, the Board has attributed all disability symptomatology and functional impairment to the now service connected PTSD and schizoaffective disorder, and the RO should consider all of the Veteran’s mental health symptomatology and functional impairment when assigning an initial disability rating. For these reasons, the Board need not consider whether service connection is also warranted for any other mental health disorders.

2. Entitlement to a TDIU

Disability ratings are determined by applying the criteria set forth in VA’s Schedule for Rating Disabilities (Rating Schedule), which is based on the average impairment of earning capacity. 38 U.S.C. § 1155. Total disability is considered to exist when there is any impairment which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. Total disability may or may not be permanent. 38 C.F.R. § 3.340(a)(1). Total ratings are authorized for any disability or combination of disabilities for which the Rating Schedule prescribes a 100 percent evaluation. 38 C.F.R. § 3.340(a)(2).

TDIU may be assigned when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. The service-connected disabilities, employment history, educational and vocational attainment, and all other factors having a bearing on the issue will be addressed in both instances. 38 C.F.R. § 4.16(a),(b).

If there is only one such disability, it must be rated at 60 percent or more; if there are two or more disabilities, at least one disability must be rated at 40 percent or more, with sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a). For the above purpose of one 60 percent disability, or one 40 percent disability in combination, the following will be considered as one disability: (1) disabilities of one or both upper extremities, or of one or both lower extremities, including the bilateral factor, if applicable, 

(2) disabilities resulting from common etiology or a single accident, (3) disabilities affecting a single body system, e.g. orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric, (4) multiple injuries incurred in action, or (5) multiple disabilities incurred as a prisoner of war. 38 C.F.R. § 4.16(a).

If a veteran’s disabilities do not meet the objective combined rating percentage criteria of 38 C.F.R. § 4.16(a), it then becomes necessary to consider whether the criteria for referral for extraschedular consideration are met under § 4.16(b) criteria. It is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. Submission to the Director, Compensation and Pension Service, for extraschedular consideration is warranted in all cases of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in § 4.16(a). 

38 C.F.R. § 4.16(b).

Individual unemployability must be determined without regard to any non service connected disabilities or a veteran’s advancing age. 38 C.F.R. 

§§ 3.341(a), 4.19; Van Hoose v. Brown, 4 Vet. App. 361 (1993). The sole fact that a veteran is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is recognition that the impairment makes it difficult to obtain or keep employment, but the ultimate question is whether a veteran is capable of performing the physical and mental acts required by employment, not whether a veteran can find employment. Id. at 361. When reasonable doubt arises as to the degree of disability, such doubt will be resolved in a veteran’s favor. 38 C.F.R. 

§ 4.3.

In Faust v. West, 13 Vet. App. 342 (2000), the United States Court of Appeals for Veterans Claims (Court) defined “substantially gainful employment” as an occupation that provides an annual income that exceeds the poverty threshold for one person, irrespective of the number of hours or days that a veteran actually works and without regard to a veteran’s earned annual income. In Hatlestad v. Derwinski, 5 Vet. App. 524, 529 (1993), the Court held that the central inquiry in determining whether a veteran is entitled to a TDIU is whether a veteran’s service connected disabilities alone are of sufficient severity to produce unemployability. The determination as to whether a total disability is appropriate should not be based solely upon demonstrated difficulty in obtaining employment in one particular field, which could also potentially be due to external bases such as economic factors, but rather to all reasonably available sources of employment under the circumstances. See Ferraro v. Derwinski, 1 Vet. App. 326, 331-332 (1991).

In evaluating a veteran’s employability, consideration may be given to the level of education, special training, and previous work experience in arriving at a conclusion, but not to age or impairment caused by non-service-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19.

Marginal employment is not considered substantially gainful employment and generally is deemed to exist when a veteran’s earned income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person. Marginal employment may also be held to exist in certain cases when earned annual income exceeds the poverty threshold on a facts-found basis. Consideration shall be given in all claims to the nature of the employment and the reason for termination. 38 C.F.R. § 4.16(a). Marginal employment, odd-job employment, and employment at half the usual remuneration is not incompatible with a determination of unemployability if the restriction to securing or retaining better employment is due to disability. 38 C.F.R. § 4.17(a) (2017).

The ultimate issue of whether a TDIU should be awarded is not a medical issue, but rather is a determination for the adjudicator. See Moore v. Nicholson, 21 Vet. App. 211, 218 (2007) (ultimate question of whether a veteran is capable of substantial gainful employment is not a medical one; that determination is for the adjudicator), rev’d on other grounds sub nom, Moore v. Shinseki, 555 F.3d 1369 (Fed. Cir. 2009). Although VA must give full consideration, per 38 C.F.R. § 4.15, to “the effect of combinations of disability,” VA regulations place responsibility for the ultimate TDIU determination on VA, not a medical examiner’s opinion. Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013); 38 C.F.R. § 4.16(a); see also Smith v. Shinseki, 647 F.3d 1380, 1385-86 (Fed. Cir. 2011) (VA is not required to obtain an industrial survey from a vocational expert before making a TDIU determination but may choose to do so in an appropriate case).

During the relevant period on appeal, the Veteran was not service connected for any disability other than the now service connected PTSD and schizoaffective disorder. As these mental health disabilities have not yet been rated, the Board is unable to determine whether the Veteran meets the schedular requirements under 38 C.F.R. § 4.16(a); however, because the evidence of record reflects that the Veteran is unable to obtain or maintain substantially gainful employment as a result of service connected disabilities, the Board finds that entitlement to a TDIU would still be warranted under 38 C.F.R. § 4.16(b) if, upon rating by the AOJ, the disabilities do not meet the objective combined rating percentage criteria of 

38 C.F.R. § 4.16(a).

As discussed above, prior to the passage of the AMA, if a Veteran did not meet the schedular requirements under 38 C.F.R. § 4.16(a), the Board could remand to the Director, Compensation and Pension Service, for extraschedular consideration. Post AMA, the Board may only remand an issue to correct any pre-decisional duty to assist or notify errors it identifies. Pub. L. No. 115-55, § 2(d)(2). Therefore, the regulation directing remand to the Director, Compensation and Pension Service, for consideration under 38 C.F.R. § 4.16(b) appears to have been overridden by statute. As such, the Board finds that, no matter what rating the service connected disabilities receive in the future, the Board may decide the question of entitlement to a TDIU at this time.

After reviewing all the evidence of record in this case, the Board finds that the evidence is at least in equipoise on the question of whether the Veteran’s service connected disabilities prevented the Veteran from maintaining substantially gainful employment for the entire rating period on appeal. 

The Veteran received a VA mental health examination in June 2016. Per the examination report, the Veteran last worked as a barista at a local coffee shop in 2015. The employment only lasted a few weeks, as the Veteran was forced to leave the job after having an emotional breakdown. Prior to working at the coffee shop, the Veteran spent three years (2010 to 2013) working for his mother’s business, until she fired him due to his mental health symptoms (see April 2018 lay statement from Veteran’s mother). Upon examination, the VA examiner reported that the Veteran had a number of severe mental health symptoms, including difficulty adapting to stressful circumstances, including work or a work like setting, persistent delusions or hallucinations, neglect of personal appearance and hygiene, and intermittent inability to perform activities of daily living. The VA examiner opined that the Veteran’s symptoms led to total occupational impairment.

VA subsequently received a May 2018 private mental health examination report. Per the examination report, the private psychologist opined that the Veteran’s mental health symptoms rendered the Veteran unable to maintain substantially gainful employment in any capacity for the entire rating period on appeal. In reaching this conclusion, the private psychologist noted the Veteran’s serious symptoms, including persistent delusions or hallucinations, illogical speech, near continuous panic and depression, suicidal ideation, and difficulty adapting to stressful circumstances, including work or a worklike setting. Such symptoms would negatively affect the Veteran’s ability to communicate, remember and/or follow instructions, use proper judgment, show insight, think abstractly, concentrate, interact with superiors and coworkers, and/or handle the stresses and demands of employment.

Resolving reasonable doubt in the Veteran’s favor, for all of the reasons discussed above, the Board finds that the newly service connected mental health disorders prevented the Veteran from obtaining or maintaining substantially gainful employment for the entire rating period on appeal. A VA examiner in June 2016 found the Veteran to be totally occupationally impaired, and a private psychologist in May 2018 found that the Veteran’s severe mental health symptomatology prevented the Veteran from maintaining substantially gainful employment. For these reasons, resolving all reasonable doubt in favor of the Veteran, the Board finds entitlement to a TDIU warranted. 38 C.F.R. §§ 3.340, 3.341, 4.16.

 

J. PARKER

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD E. Blowers, Counsel